Good morning, Your Honors. Thank you very much for the opportunity to show you why a mistake was made in this case. I'm going to be short, even shorter than the short presentation I had planned. This is a very important case. It's obviously important to our client whose financial life has been ruined by the imposition of the bankruptcy death penalty upon her. And that's a term used in many cases. It's also very important because I have practiced bankruptcy law for a very long time. And I have seen many, many cases. And the courts in the bankruptcy field need guidance. This case came out wrong because the premise underlying the trial was wrong. This case was tried under the theme that our client could be held responsible merely because she knew or should have known certain underlying facts. Our able opposing counsel in his brief said that this enterprise is to determine a weighing of historical facts. The district court said that the bankruptcy court standard was wrong. It then went down the same wrong path because it ruled that instead of just knowing historical facts, that the standard was that you would know that there is a historical fact or that an asset belonged to the debtor. And the analysis stopped there. He quoted the district court, the Radloff case from Minnesota, as the question is, does the debtor have an awareness of his own interest in or claim to an asset material to the bankruptcy process? Well, let me just point out. I think the district court, whose opinion we are reviewing, thought that it was important to be careful about what has to be known, where does intent come in. And I'll point out things that are concerning to me about this. Circumstantial evidence at a minimum suggests to me that the district court rationally could have found that she knew about the Van Buren property and the need to list it, that she knew about the bank guarantee with Edgebrook Bank, a very large guarantee. Whether she thought it was going to go away or not is really not pertinent in bankruptcy. You've got to schedule it. She knew about the shared bank accounts, even though at the moment they were very small, but the bankruptcy form is pretty clear. You put down your bank accounts. I think those are the strongest things. The shareholder loan might have been a little murkier, except, as the district judge said, one where the other looks like something needed to be disclosed. It was either done or it wasn't done. So these are all things she knew about and they're not in the form. Now then we can move to the question whether she negligently or forgetfully or deliberately or however, whatever adjective you want, you know, did she omit them for the right reason? She knew she had these things. They were not in the form. She knew they were not in the form. Judge, the district court, as I was saying, quoted the Radloff case from Minnesota. And that case said there are two prongs to the scienter element of the knowing element. And the first is what you just went to, which is does the debtor have an awareness of his interest in an asset or the condition? And so can we agree that she did, that the answer to that is yes? The first prong. I'm just, one step at a time, one step at a time, I want to know whether you agree that the district court's finding that she did know these things was not clearly erroneous. I disagree to this extent. The standard isn't whether she has historical knowledge even for that prong. The standard is whether he wanted to impose the district court that knows and should remember standard. No, the district court is taking it in a different order from the one that you're taking. And the district court says the first thing we have to find is does she even know it's there? Yes. I'll put it that way. The answer is yes. Then there's the next question. Was her failure to put it down on the bankruptcy form something that deserves to be called intentional so that you're in 727 territory? No. I disagree, Judge. The district court's error is that he did not quote, it did not quote the very next sentence of the Radloff case. Because we're still on the knowing element. The bankruptcy court in Minnesota, what obligated the district court to do that? It's the district court's basis for ruling. It's his quote. The district court cited to Radloff. And the court says, concludes that the bankruptcy court erred in applying a should have known standard. Nevertheless, the error does not warrant reversal because the debtors knew the truth about the information they misstated. The debtor, he italicizes it. The debtors knew. It's incomplete. He doesn't act. He knows it's part one. And then he goes on to fraudulently, starting on page 19, the other half of the Scienter question. Respectfully, Judge, we're not on intent yet. We're still on Scienter, which has a second element in the district judge's own quoted case, which states the very next sentence. The second point about Scienter, Your Honor, is the second is the debtor's understanding that he was required to disclose the specific points of information on his statements and schedules. I don't know that that helps you so much. I mean, I think the way the district court broke this down is quite sensible. He says, there's no real dispute. The debtors knew they owned the Van Buren property, had executed personal guarantees with Edgewood, and he goes on from some other stuff. And then he says, the bankruptcy court didn't earn, holding the fourth element was satisfied. Then he turns to intent to defraud, which some of the things you're talking about right now might factor in. If somebody didn't have any idea that it belonged in the bankruptcy form, then its omission would not suggest an intent to defraud. And Judge, I don't mean to belabor the point. I will move on. All I'm saying is that point, that they relate to the bankruptcy, is part of the knowing Scienter element. It's not part of the intent. The intent is the other things that I would get to. But intent, we aren't there yet. So you don't think that's relevant to the intent, whether or not the debtor knew she was supposed to report? Some of these things, Judge, it's a little bit matter of degree. But no. The case cited by the district court itself says it's a knowledge, a knowing element. It is not the intent. I would agree with the district court on that basis. And other things go into it. Maybe I'm missing what we're doing here. But I thought Judge Tharp pretty clearly demarcated between knowledge. He has a whole section on knowledge. And then he goes full stop. And he transfers over to intent. I agree with what I'm, that's what I'm reading. The reason you don't have it in front. What's wrong with what he did? The reason for the confusion is that Judge Tharp inadvertently did not cite to the second element of Scienter in the case he used. He does, no, I mean, you're, that's crazy. So you think in determining knowledge, the first prong, that he should have made a determination at that point that the debtor knew that these items should have been reported? Yes. And that's what that case says. And you're saying that's not part of the intent to defraud. So if he did it there, it's wrong? You can put it in either place. I'm going on a paradigm. But he puts it in the fraudulent. It's not like he omits that inquiry. He just puts it, the bankruptcy court concluded there's a pattern of misstatements and omissions that evidence a reckless disregard for the truth. Yes. And he puts it in there. OK. Why not? And you just said he can put it in either place. I don't think it's in the right place in the opinion. Because there are two elements. You could put it in either place. You did say that. I heard you say that too. Let's assume. Let's assume that it should go in the first prong. But he did it in the second prong instead. What's the harm? What's the error, as long as he did it? If the first prong isn't fulfilled in and of itself, then you can't find that the debtor doesn't deserve a discharge. Is it a way that it could have been fulfilled for intent to defraud, but not for knowledge? He made the finding that it was fulfilled. He made the finding in determining intent to defraud that she knew these should have been reported. So the fact that he didn't do that on knowledge, it's still there. What's the harm? If it does not fulfill both elements, the debtor gets a discharge. And he found it fulfilled both elements. He just assessed whether or not she knew it should have been reported in the second element. So what's the harm? How could it have come out differently? I think the case should have come out differently because there are no findings here that the debtor was aware that it should go into the bankruptcy schedule. I thought you were going to get to that. Yes. OK, the difficulty that I have with that is a point that I think Judge Tharp mentioned, but nowhere near to the degree that the bankruptcy court mentioned. And that was, I think the bankruptcy court on three or four different occasions emphasized that the debtor sat down with her counsel and went page by page through the financial statement disclosures and the supporting schedules, and did so with knowledge of the Van Buren property, the guarantees, et cetera, et cetera. Sure, Judge. We could go through this, and we pointed this out. It's a catch-22. There are cases that say, you didn't go through this with your counsel, so you're guilty. And the others say, you went through this with your counsel, so you're guilty. I love Peter Nabhani, and he's going to heaven, and I'm not. But he was an incompetent lawyer, and he didn't do these schedules right. And my client is going to be asked to pay for the rest of her life for his mistakes. That is not justice, and that is also against the clear, factual findings here. One of you mentioned the- What do you mean against the clear, factual findings? One of the points that we emphasize in our Kempf opinion is that the bankruptcy judge sits ringside to these proceedings. And in a case where you have a pattern of false representations or omissions, you know, proper deference is warranted. And one of the points that the bankruptcy court made is that she sat down with her counsel and reviewed these filings page by page. I mean, that's a heavy burden to overcome. There is no pattern that has been described in the case. There are just the words that, and counsel- But you've been talking about whether she knew she was supposed to have it on the form. She does this meticulous review with her counsel. She knows about the properties. She knows about the guarantee. She knows about these various things and keeps her mouth shut. There's no finding ever, and she did not know that the guarantee should go on the form. There was only judge and a- We would have to find clear error, I think, to rule. And I think you should find clear error, Judge. If you want to save your last minute and a half, I will let you do that. Mr. Paulson. May it please the Court. Your Honors, I think one point that my colleague was making was that there were two prongs in that Radloff decision. There was some discussion about whether it was appropriately addressed or not. The district court did address both prongs. In footnote 10 of his opinion, he did mention that there was a second prong. He indicated that it was better taken as part of an intent inquiry, and that's why he took it up in the intent inquiry. So he did, and as he pointed out, Judge St. Eve, he did address that in the intent inquiry. Your Honor, my colleague says that we have a need for clarity for the bankruptcy courts. In his briefs, he pointed out a number of cases that came out differently. And he suggests that the reason they came out differently is because we have different judges, and they don't have specific direction from this court on how to proceed. But I think what's really going on here is we have different cases with different facts and different debtors. The judges have an opportunity to sit and hear the evidence. They have an opportunity to see the witnesses and to determine whether they're credible or not. That's the reason for the differences between the cases. This court, the Supreme Court, and the statute have very clear standards. A debtor that knowingly and fraudulently makes a false oath or account on their bankruptcy schedules does not get a discharge. Fraudulent intent can be proved if the debtor has reckless disregard for the truth. Does that have to be material? I mean, I've been looking at this Edgebrook bank guarantee. It's a liability on her part for $812,000 on this promissory note. It's not like she's concealing an asset from the bankruptcy estate. She's even worse off than the schedules indicate. So in what sense is that material? Your Honor, in the bankruptcy context, materiality is broad. This case recently in the largest, or I'm sorry, this court recently in the largest case has emphasized that materiality, when it comes to objections to discharge, means basically anything that has to do with the debtor's financial affairs. It's not whether the estate would have benefited. Although, if the estate did benefit, certainly that would make it material. But also we have- But you wouldn't, you agree, you couldn't possibly say that with the $812,000 guarantee. She's even further in the hole if that gets called on than she already was. Yes, that's true, Your Honor. But even things that are valueless have to be disclosed in your bankruptcy petition. In the statement of financial affairs, there's a question that asks whether you have any financial accounts that were closed in the past year. Closed financial accounts clearly have no value, but it still has to be reported. For instance, as in this case, when we looked at the statements for the undisclosed accounts, we saw that there are transfers that had been made. The debtor owed money to creditors at that point. Instead of transferring money to other people, she could have been using that money to pay creditors. This is the reason why the bankruptcy schedules require not just information about your assets, but also about who your creditors are, and also certain historical information about your financial affairs. My colleague emphasizes that there has to be, for the knowledge element, a conscious awareness that facts must be disclosed, and a conscious decision not to list them. But really, these factors are all about intent. They really focus on why did the debtor fail to disclose a known fact. And as such, you can't accept the conscious and deliberate standard. Well, you would agree this is a finding of fact. I mean, that may make some difference here. Because if it's a fact finding on the intent, then the standard of review would be clear error. And it would also be possible to show it through circumstantial evidence, since you normally can't get inside someone's head. If it's closer to an issue of law, that's different. Yes, I agree. This is definitely an issue of fact. There have been numerous cases from this court that say that intent is a statement of fact. Your Honor, at the end of the day, It's one of those ultimate facts that the Supreme Court pretends doesn't exist in cases like Pullman's standard. Right. Your Honor, at the end of the day, what we have here is a judge that held a trial over several afternoons. He heard the witnesses. He heard their explanations. He decided to reject their explanations. And he found that there was a pattern of false statements here that was sufficiently egregious to warrant denial of the debtor's discharge. For that reason, The debtor has argued that she made disclosures of some of these factors to the Chapter 7 trustee. Do you dispute that? We do dispute some of those. There were some disclosures that were made to the Chapter 7 trustee. For instance, You think the alias was made? Yes, she did disclose that. There was also bank statements that were turned over. However, Is that relevant to the intent issue? Your Honor, there's a case law from this court that says that later disclosures, later amendments to the schedules, do not cure an initial fraudulent intent. So if the debtor made... Don't cure an initial intent, but the more subtle questions, the one Judge St. Eve just asked you, does it bear on whether she had that kind of intent to conceal to begin with, if she comes forward with the information later on? Your Honor, certainly it's a consideration that the courts can make. It's a fact, it's part of the record, and they can decide whether that fact might overcome that initial intent. And was that sufficiently addressed here? Yes, Your Honor. First of all, the judge heard the testimony from the debtor saying that I turned over these things and was able to adjudge whether the debtor was credible. He was able to listen to the whole facts and circumstances surrounding all of the false statements and decide whether the disclosure to that one person was enough or not. One thing that's important to keep in mind here too is that the trustee is not the only party in interest who the debtor is making disclosures to. The schedules are filed publicly, they're available publicly, and they're consumed not only by the trustee whose job it is to liquidate assets, but also by creditors who want to understand what happened with their debtor leading up to this bankruptcy case. So merely giving bank statements to a trustee, merely telling a trustee about another name is not the same as telling all of your creditors about those facts. And in this case, it wasn't sufficient. Thank you very much. All right, thank you. You have about a minute and a half, Mr. Morgan. Thank you. I'd like to note that my colleague just said that this case is all about why did the debtor do it, or similar words. That is not in the pleadings, it's not in the trial, it's not in the bankruptcy court opinion, it's not in the district court opinion, and that is a critical question. There is no evidence the debtor had no motive to do any of this. It's all mistakes. None of it is the most egregious conduct that this court has found in other places. Has to be an extreme departure from ordinary care. There's nothing here worth condemnation to the bankruptcy death penalty. And there are factual mistakes. There were no transfers from, say, that FERCA account. The money came from a corporation, Lockwood, not from Ms. Schlott. It was put into an account and withdrawn by an employee of Lockwood who had signing power. That is not a transfer of Ms. Schlott's property. And then we cited a case that said it doubts that a withdrawal by a joint tenant ever is a transfer. There were also no transfers regarding the shareholder loan. There was old 2012 information from a tax return. Whatever happened, happened in 2013. That 2013 tax return was done in late 2014. There was no movement of money, which is what the bankruptcy court is normally addressing. There was only the movement of a CPA or accountant's pen. There were no transfers. All right, thank you very much, Mr. Morgan. Thanks to both counsel. We'll take the case under advisement.